# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| SHANON DENISE VOTAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 3:12-CV-366 |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

This matter is before the Court for review of the Commissioner of Social Security's decision denying Supplemental Security Income to Plaintiff, Shanon Denise Votaw. For the reasons set forth below, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

## BACKGROUND

On June 23, 2010, Plaintiff, Shanon Denise Votaw ("Votaw" or "claimant"), applied for Supplemental Security Insurance ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. sections 1381 et seq. Votaw alleged that her disability began on November 1, 2008, when she aggravated a pre-existing back injury. The Social

Security Administration denied her initial application and also denied her claims on reconsideration. On October 17, 2011, Plaintiff appeared with counsel at an administrative hearing before Administrative Law Judge ("ALJ") Warnecke Miller ("Miller"). Testimony was provided by Votaw, Janet Sparline (the claimant's mother-in-law), and Micha A. Daoud (a vocational expert or "VE"). On November 30, 2011, ALJ Miller denied the claimant's SSI claim, finding that Votaw had not been under a disability as defined in the Social Security Act. (Tr. 19-32).

The claimant requested that the Appeals Council review the ALJ's decision and the request was denied. Accordingly, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a)(2005). The claimant has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

DISCUSSION

Votaw was born on June 27, 1966. Votaw alleges the following impairments: degenerative disc disease, osteoarthritis, status post bilateral ankle surgeries, chronic obstructive pulmonary disease and a mood disorder. Votaw completed twelfth grade but does not have any additional training. Her past relevant work includes work as a production worker, foundry laborer, machine tender, and packager.

The medical evidence can be summarized as follows:

In 2005, Votaw reported pain in both feet, with swelling, numbness, tingling and instability. (Tr. 340). Dr. Hammersly assessed subtalar joint instability, ankle joint instability, foot pain, tibious posterior tendinitis, and Pes Planus. (Tr. 339). Dr. Hammersly recommended reconstructive surgery. (Tr. 339). Surgery was performed in February of 2006. (Tr. 331-32). By April of 2006, Votaw was able to ambulate some with a slight limp to the right, but had pain and discernable redness on her foot and leg. (Tr. 325)[1].

In 2008, Votaw aggravated a pre-existing back injury. (Tr. 273). She attempted conservative treatment. In March of 2009, when conservative treatment had failed, Votaw underwent a lumbar spine decompression and fusion surgery. (Tr. 266-68, 272-80, 285-86). The surgeon, Dr. Rahn, implanted spinal instrumentation and an EBI bone stimulator. (Tr. 266, 277-80, 284). At the time of the surgery, Votaw understood that her chances of pseudoarthrosis (a term used when spinal fusion surgery does not result in a solid fusion) and nonunion were higher because she smoked. (Tr. 266-67).

Three weeks after surgery, Votaw was doing well. (Tr. 262). She was prescribed Norco, Flexeril, and Neurontin, and she was instructed to remain off work and not to lift more than 15 pounds.

---

[1] The Court finds Dr. Hammersley's notes illegible and has relied upon Votaw's brief regarding this statement.

(Tr. 262-64). In June, Dr. Rahn again reported that Votaw was doing well, but that she continued to smoke and that this was "an issue for healing." (Tr. 258). X-rays showed a solid fixation and that fusion was occurring but not very fast. (Tr. 258). Votaw was to remain off work. (Tr. 258).

By August of 2008, Votaw indicated that her pain was better than before surgery, but that she still had a fair amount of pain. (Tr. 253). Dr. Rahn raised her lifting restrictions to 20 pounds and prescribed Neurontin. (Tr. 253-55). A month later, Dr. Rahn noted that a CT of the lumbar spine showed slow healing at L5-S1 (Tr. 250). There was "almost nearly nonunion" but no loosening in Votaw's hardware. (Tr. 250).

In February of 2010, Votaw reported that she was 70% better than before surgery, but she had moved and could not return to her job. (Tr. 247-48). The 20 pound lifting restriction was continued and a CT scan and X-ray were ordered to check the progress of healing. (Tr. 247-52).

By March of 2010, Votaw reported a recurrence of back pain. (Tr. 242-46). She was diagnosed with painful hardware, pseudoarthrosis, and nonunion. (Tr. 242-46). Another surgery was performed. Two weeks later, she was walking without too much difficulty. (Tr. 239). A Physician's Assistant with Dr. Rahn's office indicated that her progress was slow but in the right direction. (Tr. 239). Votaw was instructed to avoid bending and

twisting and continue taking Vicodin and Flexeril. (Tr. 239-240).

In June of 2010, Dr. Rahn's reports showed that Votaw was doing fairly well but had some pain and difficulty standing and walking. (Tr. 237-38). She could not lie flat on her back and had some intermittent leg pain. (Tr. 237). X-rays showed solid alignment and that fusion was occurring slowly but surely. (Tr. 237). Dr. Rahn referred Votaw to eight sessions of physical therapy to be followed by a functional capacity examination ("FCE") to assess her restrictions. (Tr. 237). Her Vicodin dosage was reduced and she was instructed to continue on Flexeril as needed. (Tr. 237). Dr. Rahn reduced Votaw's lifting restriction to less than ten pounds. (Tr. 237).

Joe Simpao, a physical therapist, performed a three-hour FCE on August 3, 2010. (Tr. 208-234). The FCE revealed that Votaw retained the ability to: lift up to eight pounds less than occasionally from knuckle to shoulder; lift up to ten pounds less than occasionally from knuckle to shoulder and from shoulder to overhead; carry up to ten pounds less than occasionally; push up to 20 pounds less than occasionally; sit 1/3 to 2/3 of the day, but no more than 20 minutes at one time; stand (static) less than occasionally, and no more than ten minutes at a time; and walk up to 1/3 of the day, but no more than five minutes at one time. (Tr. 210). The FCE indicated Votaw should never lift floor to knuckle, pull, bend, stoop, squat, or twist. (Tr. 210). The FCE further

indicated that Votaw should only use stairs and ladders, crouch, or crawl less than occasionally. (Tr. 210). Votaw reported that her back pain was two out of ten before the test and four out of ten both post-test and one day after the test. (Tr. 230, 234). She reported that her best pain rating for the past thirty days was one out of ten. (Tr. 230). Her worst pain rating for the past 30 days was five out of ten. (Tr. 230).

A consulting physician, Dr. H.M. Bacchas, examined Votaw in September of 2010. (Tr. 301-03). Votaw indicated to Dr. Bacchas that her low back pain worsened with prolonged standing, walking, bending, twisting, turning, lifting, and climbing and stated that she could sit for 20 to 30 minutes, stand for five minutes, walk 10-15 minutes, and lift 10 pounds. (Tr. 301). Votaw also reported that she performed her activities of daily living independently. (Tr. 301). She reported that she continued to smoke. (Tr. 301). On examination, Dr. Bacchus found that Votaw had a reduced range of motion in her neck, lower back, knees and ankles; positive straight leg test at 60 degrees in both legs; a mildly antalgic, steady, fairly sustainable gait; full grip strength, preserved fine motor dexterity; no muscle atrophy; sensory dullness in the right buttock and thigh; normal reflexes; and full muscle strength in all extremities except her right leg, which was a 4/5. (Tr. 302-03). Votaw could not hop, squatted halfway, and had some difficulty with heel gait. (Tr. 203). She could tandem and toe walk and used no

assistive device to walk. (Tr. 302). Based on his examination, Dr. Bacchus believed that Votaw was capable of performing at least light duties, standing three to four hours in a six to eight hour workday noncontinuous. (Tr. 302).

A week later, Votaw saw Dr. Rahn again. (Tr. 305). She reported difficulty with walking and standing, varying from day to day. Dr. Rahn kept her lifting restriction at less than ten pounds. (Tr. 305).

In September of 2010, a state agency reviewing physician, Dr. Frank Lavallo, opined that Votaw could perform light work, but could never climb ladders, ropes, or scaffolds; and could perform all other postural movements only occasionally. (Tr. 80-81). Dr. Bond, another state agency reviewing physicians, affirmed this decision approximately two months later. (Tr. 311).

In October of 2010, Dr. Rahn reported that a CT scan showed "continued nonunion type issues" and motion at the L5-S1 level. (Tr. 304, 306-08). Dr. Rahn believed that Votaw's continued smoking likely contributed to her failure to heal. (Tr. 304). Nonetheless, as long as the EBI bone stimulator was working, Dr. Rahn felt that Votaw had a good chance of healing. (Tr. 304).

When Votaw saw Dr. Rahn next, she reported continued pain and difficulty, but that she was somewhat better than before surgery. (Tr. 313). X-rays showed stable anterior listhesis at C5 on S1. (Tr. 318). He recommended that a painful battery in her EBI

stimulator be removed. (Tr. 313). That surgery was performed on April 15, 2011. (Tr. 344-46). Two weeks later, she was "doing fairly well" and Dr. Rahn indicated that he would see her on an as needed basis. (Tr. 343).

Five months later, Votaw reported a fair amount of pain. (Tr. 342). Her CT looked fairly stable according to Dr. Rahn. (Tr. 342, 349-50). At this point, Dr. Rahn decided to keep Votaw on less than a ten pound lifting restriction and indicated that, from his standpoint that lifting restriction would be permanent. (Tr. 342). He did not feel that her ability to lift would change in the near future. (Tr. 342).

Votaw testified that she can stand for maybe five to ten minutes in one place, and can walk longer than she can stand. (Tr. 47-48). As far as sitting, she cannot sit indefinitely. (Tr. 48). She testified that there are times when she can hardly get out of bed on her own. (Tr. 48). Other times, Votaw has good days. (Tr. 48). She testified that her pain never goes away. (Tr. 48). She has pain in her lower back, and sometimes on bad days it spreads higher and will shoot across both sides of her lower back. (Tr. 48). If she moves wrong, she has a sharp pain that "stops [her] dead in [her] tracks." (Tr. 48). She cannot sleep on her back. (Tr. 49). To alleviate the pain she needs to get up and move. (Tr. 49). If she is standing, she needs to sit. (Tr. 49). As an example, she noted that if she has to stand in line at a checkout

for very long she must shift her weight back and forth. (Tr. 49). Medications sometimes take the edge off the pain. (Tr. 49).

On a normal day, Votaw walks her daughter to the bus station and back. (Tr. 51). Then, she comes home and sits and relaxes. (Tr. 51). She gets things ready for dinner. (Tr. 51). Her kids will make dinner. (Tr. 51). And, if she needs laundry done, the kids will bring it down or carry it up. (Tr. 51). If the floor needs swept, her son will do it. (Tr. 51). Her daughter dusts. (Tr. 51). When she goes to the grocery store, she takes one of her children or her husband. (Tr. 51). She hardly goes anywhere. (Tr. 51).

Votaw testified that she still has swelling in her ankles, but her left ankle swells more than her right ankle. (Tr. 56). She still falls because of problems with her ankles. (Tr. 56). Sitting in a recliner relieves the pain in both her ankles and her back. (Tr. 57-58). She sits for half an hour or an hour and then she moves around before sitting again. (Tr. 58). She cannot carry a gallon of milk. (Tr. 59-60). When she drives long distances, she has to pull over, get out of the car, and move around. (Tr. 54).

Votaw used to enjoy fishing, hunting and horseback riding. (Tr. 58). She does not do those things anymore. (Tr. 58). She did fish once or twice in 2008, but she had to bring a chair and it was too much of a hassle. (Tr. 58).

Votaw's mother-in-law, Janice Sparling ("Sparling"), sees Votaw approximately once a week and talks to her on the phone almost daily. (Tr. 61-62). Sparling testified that Votaw does not stand in one place for any length of time, and that she does not sit for long either. (Tr. 62-63). She paces back and forth. And, she sits in her recliner for maybe 20 minutes at a time. (Tr. 62-63). She believes Votaw is in pain most of the time. (Tr. 63). According to Sparling, Votaw's children do most of the work around the house. (Tr. 64).

## Review of Commissioner's Decision

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." *Id*. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a decision." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence exists, the Court shall examine the record in its entirety, but shall not substitute its own opinion for the ALJ's by reconsidering the facts or re-weighing evidence. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). With that in mind, however, this Court reviews the ALJ's findings of law de novo

and if the ALJ makes an error of law, the Court may reverse without regard to the volume of evidence in support of the factual findings. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

As a threshold matter, for a claimant to be eligible for SSI benefits under the Social Security Act, the claimant must establish that she is disabled. To qualify as being disabled, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382(a)(1). To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five step evaluation:

Step 1:   Is the claimant performing substantial gainful activity: If yes, the claim is disallowed; if no, the inquiry proceeds to step 2.

Step 2:   Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months? If not, the claim is disallowed; if yes, the inquiry proceeds to step 3.

Step 3:   Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404 Subpt. P, App. 1? If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to step 4.

Step 4:   Is the claimant able to perform his past relevant work? If yes, the claim is denied; if no, the inquiry proceeds to step 5, where the burden of proof shifts to the Commissioner.

Step 5:   Is the claimant able to perform any other work within his

residual functional capacity in the national economy: If yes, the claim is denied; if no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v); see also *Herron v. Shalala*, 19 F.3d 329, 333 n. 8 (7th Cir. 1994).

In this case, the ALJ found that Votaw suffered from the following severe impairments: degenerative disc disease, osteoarthritis, and status post bilateral ankle surgeries. The ALJ further found that Votaw did not meet or medically equal one of the listed impairments and could not perform any of her past relevant work. Nonetheless, the ALJ found that Votaw retained the residual functional capacity ("RFC") to perform sedentary work (defined by the ALJ as the ability to lift/carry ten pounds frequently, sit six hours in an eight-hour workday and stand and walk in combination six hours in an eight-hour work day), but with the following additional limitations: only occasional bilateral pushing and pulling and occasional climbing of ramps/stairs, balancing, stooping and kneeling; unable to climb ladders, ropes or scaffolds; unable to crouch or crawl; must avoid hazard; and needs to alternate between sitting and standing approximately every 30 minutes but in such a manner that she is not rendered off-task. After considering Votaw's age, education, work experience and RFC, the ALJ relied upon the testimony of a VE and concluded that Votaw was not disabled and not entitled to SSI because she retained the capacity to perform a significant number of jobs despite her

functional limitations.  Thus, Votaw's claim failed at step five of the evaluation process.

Votaw, believes the ALJ's opinion, which she describes as rambling and contradictory, demonstrates that the ALJ committed several errors requiring reversal.  Votaw asserts that the ALJ failed to build a logical bridge between the evidence and his conclusions, inappropriately "played doctor," and "cherry picked" from the evidence.  She also complains that the ALJ's credibility determination utilized boilerplate language that has been criticized by the Seventh Circuit Court of Appeals.  Votaw further claims that the ALJ failed to give proper weight to the opinions of Votaw's treating physician.  Additionally, Votaw argues that the ALJ failed to properly assess her pain.  And, as a result of these errors, Votaw asserts that the ALJ's opinion is not supported by substantial evidence.

The ALJ's Credibility Determination

Votaw claims that the ALJ failed to properly evaluate the credibility of her testimony.  Because the ALJ is best positioned to judge a claimant's truthfulness, this Court will overturn an ALJ's credibility determination only if it is patently wrong. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).  However, when a claimant produces medical evidence of an underlying impairment, the ALJ may not ignore subjective complaints solely because they are unsupported by objective evidence.  *Schmidt v.*

*Barnhart*, 395 F.3d 737, 745-47 (7th Cir. 2005). Instead, the ALJ must make a credibility determination supported by record evidence and be sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight given to the claimant's statements *and the reasons for that weight*. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003)(emphasis added).

In evaluating the credibility of statements supporting a Social Security Application, the Seventh Circuit Court of Appeals has noted that an ALJ must comply with the requirements of Social Security Ruling 96-7p. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). This ruling requires that ALJs articulate "specific reasons" behind credibility evaluations; the ALJ cannot merely state that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." SSR 96-7p. Furthermore, the ALJ must consider specific factors when assessing the credibility of an individual's statement including:

      1.    The individual's daily activities;

      2.    The location, duration, frequency and intensity of the individual's pain or other symptoms;

      3.    Factors that precipitate and aggravate the symptoms;

      4.    The type, dosage, effectiveness, and side effect of any medications the individual takes or has taken to alleviate pain or other symptoms;

      5.    Treatment, other than medication, the

> individual receives or has received for relief
> of pain or other symptoms;

> 6.  Any measures other than treatment the
>     individual uses or has used to relieve pain or
>     other symptoms; and

> 7.  Any other factors concerning the individual's
>     functional limitations and restrictions due to
>     pain or other symptoms.

SSR 96-7p; *see also Golembiewski v. Barnhart*, 322 F.3d 912, 915-16

(7th Cir. 2003).

As noted earlier, Votaw is critical of the ALJ's credibility

determination because the ALJ relies on "boilerplate" language that

has been criticized by the Court of Appeals for the Seventh

Circuit. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012);

*Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). The ALJ

stated the following regarding Votaw's credibility:

> After consideration of this evidence, the
> undersigned finds that the claimant's
> medically determinable impairments could
> reasonably be expected to cause the alleged
> symptoms; however, the claimant's statements
> concerning the intensity, persistence and
> limiting effects of these symptoms are not
> persuasively supportive of total disability.
> Rather, the allegations raised in testimony
> appear credible to the extent they are
> consistent with the above residual functional
> capacity assessment, as discussed herein.

(Tr. 25). In *Bjornson*, the Seventh Circuit noted:

> One problem with the boilerplate is that the
> assessment of the claimant's "residual
> functional capacity" (the bureaucratic term
> for ability to work) comes later in the
> administrative law judge's opinion, not

> "above" – above is just the foreshadowed
> conclusion of that later assessment. A deeper
> problem is that the assessment of a claimant's
> ability to work will often . . . depend
> heavily on the credibility of her statements
> concerning the "intensity, persistence and
> limiting effects" of her symptoms, but the
> passage implies that ability to work is
> determined first and is then used to determine
> the claimant's credibility. That gets things
> backwards.

*Id.* at 645. Yet, as noted by the Court in *Adams v. Astrue*,

> While this sort of boilerplate is inadequate,
> by itself, to support a credibility finding,
> its use, does not make a credibility
> determination invalid. Not supporting a
> credibility determination with explanation and
> evidence from the record does.

*Adams v. Astrue*, 880 F.Supp.2d 895, 906 (N.D. Ill. 2012) (emphasis
in original) (citations omitted). In *Adams*, the ALJ's decision did
not use the boilerplate language in a mechanical fashion, and the
ALJ offered further explanation to support his conclusion that
plaintiff's claimed limitations were not supported by the record as
a whole. Accordingly, the Court determined that reversal was not
warranted.

In this case, the ALJ considered at least some of the factors
listed in SSR 96-7p. The ALJ discussed Votaw's activities of daily
living at length. He considered her testimony regarding the
location, duration, frequency and intensity of pain. He considered
the treatment she received and the medications she takes. But,
there is very little (if any) explanation of what it is about these

considerations that caused the ALJ to believe Votaw was less than fully credible.

The ALJ may have considered her smoking in determining that she was not credible. While discussing Dr. Rahn's records, the ALJ noted that, "while it appears the claimant continues to experience ongoing residuals worsened by ongoing smoking of cigarettes, the overall findings are improved and did not warrant a change in restrictions." (Tr. 25). This was not the ALJ's only reference to Votaw's continued smoking. (Tr. 27-29). The ALJ was clearly troubled by Votaw's continued smoking, but it is not clear if this was a basis for the ALJ's credibility determination. If it was, then that was improper. *Shramek v. Apfel*, 226 F.3d 809-813 (7th Cir. 2000). But the bigger problem is simply that this Court, in reviewing the opinion, cannot discern the reason the ALJ believed Votaw's testimony was less than fully credible. The opinion lacks the logical bridge that the ALJ is required to build.

The ALJ did not make the necessary connections between the facts and his credibility determination. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)(where an ALJ failed to analyze the factors set forth in SSR 96-7p, the ALJ did not build a logical bridge between the evidence and his conclusion that the claimant's testimony was not credible). Because the ALJ failed to build a logical bridge between the evidence and his determination that the claimant's testimony was not credible, remand is required.

<u>Weight Given to Dr. Rahn's Opinion</u>

Votaw argues that the ALJ improperly dismissed the opinion of her treating physician, Dr. Rahn.  A treating physician's medical opinion must be given controlling weight if it is "well supported" and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c); *see Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).  An ALJ must offer "good reasons" for discounting the opinion of a treating physician.  *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).  Furthermore, SSR 96-2p requires that the ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p.

If the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the ALJ must apply the following factors to determine the proper weight to give the opinion:

> (1) the length of the treatment relationship and frequency of examination;
>
> (2) the nature and extent of the treatment relationship;
>
> (3) how much supporting evidence is provided;
>
> (4) the consistency between the opinion and the

>(5) whether the treating physician is a specialist;

>(6) any other factors brought to the attention of the Commissioner.

20 C.F.R. §§ 404.1527(c) and 416.927(a)-(d); *see Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). It is reversible error for an ALJ to discount the medical opinion of a treating physician without applying this legal standard and for further failing to support the decision with substantial evidence. *Moss*, 555 F.3d at 561; *see also Punzio*, 630 F.3d at 710 (finding the ALJ's rejection of a treating physician's mental residual functional capacity questionnaire was not substantially supported).

Dr. Rahn opined that Votaw was limited to lifting less than ten pounds since June of 2010 and expressed his opinion that this would be a permanent lifting restriction. The ALJ gave Dr. Rahn's opinions "significant" weight but not controlling weight. The ALJ offered no analysis of why he gave Dr. Rahn's opinion something less than controlling weight, but the reason no explanation was offered may be that the ALJ believe Dr. Rahn's opinion was not inconsistent with his RFC finding. (Tr. 29-30). The ALJ was mistaken in that regard. The ALJ determined that Votaw could lift and carry ten pounds frequently. That is what the ALJ included in his hypothetical question to the VE and that it is what the ALJ listed in his RFC. That is *not* consistent with Dr. Rahn's opinion

that Votaw is limited to liting less than ten pounds.  (Tr. 23).

The ALJ's opinion states that SSR 96-2p was considered, but the opinion itself provides no further indication that the checklist of factors was actually considered to determine the appropriate weight to give to Dr. Rahn's opinions. *Moss*, 555 F.3d at 561; *see also Bauer*, 532 F.3d at 608 (stating that when the treating physician's opinion is not given controlling weight "the checklist comes into play"); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (citations omitted) (criticizing the ALJ's decision which "said nothing regarding this required checklist of factors.").  For example, the ALJ's opinion does not demonstrate that he considered the length of the treatment relationship with Dr. Rahn, frequency of examination, nature and extent of the treatment, how much supporting evidence was provided by Dr. Rahn, or whether Dr. Rahn was a specialist.  20 C.F.R. § 416.927(c).

In sum, the ALJ failed to give "good reasons" for discounting the treating doctor's medical opinion, and failed to demonstrate that he considered the required checklist of factors.  In this case, the ALJ's RFC already limits Votaw to less than the full range of sedentary work due to a variety of non-exertional limitations.  Given the narrow range of work which the ALJ found Votaw could perform, it is reasonably likely that any further limitations in her ability to lift and carry ten pounds would have further eroded the occupational base to such an extent that she

would be deemed disabled within the meaning of the Social Security Act. This case must be remanded so the treating physician's opinions may be properly addressed.

## Remand is Necessary

A remand is necessary because the ALJ's findings with regards to Votaw's credibility and treating physician's opinions were not clearly articulated and not sufficiently substantiated with evidence in the record. Because remand is required on these bases, this Court need not address several additional arguments raised by Votaw.

This Court must, however, address Votaw's argument that this Court should award benefits rather than remand the case for further proceedings. "An award of benefits is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005)(internal quotations and citations omitted). While a remand is necessary, Votaw has not demonstrated that an award of benefits by this Court is appropriate.

## Attorney Fees

Votaw also requests that this Court award her attorney's fees. It is this Court's policy to require that any request for attorney's fees must be made by way of a separate motion.

CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).


**DATED: September 30, 2013**          <u>**/s/ Rudy Lozano, Judge**</u>
                                       **United States District Court**